## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CATHY A. COWHER,** | ) | **Case No. 3:21-cv-178** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARTIN O'MALLEY,** *Commissioner of* | ) | |
| *the Social Security Administration,* | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff Cathy A. Cowher ("Cowher") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (ECF No. 3). For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

### I.      Procedural History

On July 10, 2019, Cowher protectively filed a Title II application for a period of disability and DIB, alleging disability beginning August 22, 2017. (Tr. 15). Cowher's application was initially denied on December 30, 2019, and upon reconsideration on July 9, 2020. (*Id.*). On July 14, 2020, Cowher filed a written request for a hearing. (*Id.*). A hearing was held before Administrative Law Judge John A. Fraser (the "ALJ") on November 2, 2020. (*Id.*). This hearing was held telephonically due to the Coronavirus Disease 2019 ("COVID-19") Pandemic. (*Id.*).

On January 7, 2021, the ALJ issued his decision and concluded that Cowher was not disabled within the meaning of the Social Security Act. (Tr. 12–27). Cowher requested review of

the ALJ's unfavorable decision by the Appeals Council. (Tr. 7–11). The Appeals Council denied Cowher's request on August 17, 2021. (Tr. 1–6).

Cowher has now appealed to this Court, where the parties' motions for summary judgment are pending. (ECF Nos. 11–15).

## II.      Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). "The Commissioner's findings of fact are binding if they are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229 (1938)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Zirnsak*, 777 F.3d at 610 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The Court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Id.* (quoting *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Finally, the Court "review[s] the [Administrative Law Judge's] application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

## III.      Evaluation Process

The ALJ evaluates disability claims according to a sequential five-step process. 20 C.F.R. § 404.1520(a)(4). "First, the Commissioner considers whether the claimant is 'engaging in substantial gainful activity.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1520(a)(4)(i)). If the claimant is engaging in substantial gainful activity, then the claimant is not disabled and the analysis ends at the first step. *Id.* "Second, the Commissioner considers the severity of the claimant's impairment(s)." *Id.* (quoting C.F.R. § 404.1520(a)(4)(ii)). If at step two "the claimant's impairment(s) are either not severe or do not meet the duration requirement, the claimant is not disabled[,]" and the analysis ends. *Id.* "Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed impairments." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). If at step three "the claimant's impairment(s) meet [or exceed] the requirements of a listed impairment, then the claimant is disabled[,]" and the analysis may end. *Id.*

If the claimant's impairments do not meet or exceed a listed impairment, "then the inquiry proceeds to the fourth step, where the Commissioner considers whether the claimant can return to her past work." *Id.* In determining whether the claimant can perform past relevant work, the claimant's residual functional capacity ("RFC") is assessed. *Id.* "A claimant's RFC measures 'the most [she] can do despite [her] limitations.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)). (alterations in original). In assessing the claimant's RFC, the "Commissioner examines 'all of the relevant medical and other evidence' to make its RFC determination." *Id.* (quoting 20 C.F.R. § 404.1545(a)(3)). If the claimant can perform past relevant work, then the claimant is found not to be disabled. *Id.* The claimant bears the burden of satisfying the first four steps by a preponderance of the evidence. *Id.*

At step five, "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citing 20 C.F.R. § 404.1520(a)(4)(v)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). To meet this burden, "the Commissioner must produce evidence that establishes that 'work exists in significant numbers in the national economy that [the claimant] can do.'" *Zirnsak*, 777 F.3d at 612 (quoting 20 C.F.R. § 404.1560). The Commissioner uses the RFC, as well as the testimony of vocational experts and specialists, to establish that work exists in significant numbers in the national economy that the claimant can perform. *Id.* "[E]ntitlement to benefits is dependent upon the finding [that] the claimant is incapable of performing work in the national economy." *Id.* (internal quotation marks omitted).

## A.     The ALJ's Evaluation of Cowher

At step one, the ALJ found that Cowher had not engaged in substantial gainful activity during the period from her alleged onset date of August 22, 2017, through her date last insured of December 31, 2019. (Tr. 17). At step two, the ALJ found that Cowher had the following severe impairments: "pseudo-seizures, a mild neurocognitive disorder, depression, bipolar disorder, anxiety, and a cognitive disorder[.]" (*Id.*). At step three, the ALJ found that "[t]hrough the date last insured, [Cowher] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 19).

At step four, the ALJ determined that Cowher had the RFC to

perform a full range of work at all exertional levels but with the following nonexertional limitations: [Cowher] can never climb ladders or scaffolds. She is not to be exposed to unprotected heights or moving machinery. She is able to

understand, remember and carry out simple instructions. She is able to tolerate occasional interactions with public, supervisors and co-workers. She is able to tolerate one or two changes per week in an otherwise stable work routine.

(Tr. 21).

The ALJ also found that Cowher was unable to perform any past relevant work through her date last insured. (Tr. 26).

With respect to step five, at the November 2, 2020, administrative hearing, the ALJ sought the testimony of a vocational expert ("VE"). (Tr. 62–64). The ALJ asked the VE if a hypothetical individual with Cowher's age, education, and job background, could perform "any other work in the national economy[,]" considering the individual had the following limitations: (1) the "person can never climb ladders or scaffolds"; (2) the "person is not to be exposed to unprotected heights or moving machinery"; (3) the "person is able to understand, remember, and carry out simple instructions"; (4) the "person is able to tolerate occasional interactions with the public, with supervisors, and with coworkers"; and (5) the "person is able to tolerate one or two changes per week in an otherwise stable work routine." (Tr. 62–63). The ALJ also noted that there were "no exertional limitations" applicable to the individual contemplated in his hypothetical. (Tr. 63).

The VE testified that an individual with these characteristics could perform the following three jobs in the national economy: (1) dishwasher, (2) housekeeper, and (3) laundry folder. (Tr. 63). Accordingly, based on the VE's testimony, the ALJ concluded that "through the date last insured, considering [Cowher's] age, education, work experience, and [RFC], [she] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 27). With that finding in place, the ALJ held that Cowher had not been

under a disability from her alleged onset date of August 22, 2017, through December 31, 2019, her

date last insured. (*Id.*).

## IV.   Analysis

### 1.   The Parties' Arguments

Cowher's primary contention on appeal is that the ALJ erred in not explaining why he

"[a]pparently [d]iscredited" a portion of an assessment conducted by Dr. Tiffany Leonard ("Dr.

Leonard"), a State agency physician, finding that Cowher was "able to carry out very short and

simple instructions (i.e., perform one and two step tasks)." (ECF No. 12 at 5); (Tr. 98). Cowher

notes that the ALJ found Dr. Leonard's assessment "persuasive[,]" and argues that the ALJ

"provided no indication, explicit or implicit, that any part of Dr. Leonard's psychological expert

opinion findings was being rejected or otherwise given limited weight." (ECF No. 12 at 6). "Yet,"

Cowher contends, "the ALJ's RFC determination omitted 'very short' and only included 'simple'

as to the limitation on instructions, both in his written decision and to the VE." (*Id.*). Because the

ALJ accorded Dr. Leonard's opinion persuasive weight, Cowher argues that the ALJ's "RFC

finding should have limited [her] to 'very short' simple instructions, not just simple instructions."

(ECF No. 15 at 2).

Cowher goes on to aver that "[t]his is not a harmless error because 'very short and simple

instructions' or 'short and simple instructions' has consistently been held by this [C]ourt as

creating an apparent conflict with jobs at Reasoning Level 2 ("R2") or higher." (*Id.* at 7) (collecting

cases). She also notes that "[t]he dishwasher job"—one of the three jobs identified by the VE at

the November 2, 2020, administrative hearing that Cowher could perform—"is an R2 job." (*Id.*).

Cowher argues that while the "simple instructions" limitation contained in her RFC does not

-6-

create an apparent conflict with jobs at R2 or higher, "'very short' or 'short' and simple instructions conflict with jobs at R2 or higher." (*Id.*). By Cowher's telling, if her RFC had included Dr. Leonard's finding that she could only follow "very short" instructions, "the job of dishwasher would conflict with the RFC, requiring the VE to resolve the conflict, which did not occur in this case." (*Id.*).

Cowher also contends that while the other two jobs identified by the VE, housekeeper and laundry folder, "are both jobs of light exertion," this is "a moot point in this case." (*Id.* at 8). She argues that "if those two jobs are the only jobs remaining," because Cowher has been of "advanced age (age 55+) during the entire relevant period," then "she must be found disabled per direct application of Grid Rule 202.06." (*Id.*). For these reasons, Cowher claims that the ALJ's decision to deny her DBI was not supported by substantial evidence.

The Commissioner, for his part, argues that—reading the ALJ's decision as a whole—substantial evidence supported his RFC determination that Cowher could understand, remember, and carry out simple instructions. (ECF No. 14 at 11). The Commissioner notes that the ALJ found the assessments of Dr. Franks and Dr. Leonard (both State agency psychologists) persuasive, and both Doctors "found that [Cowher] could perform a range of unskilled work." (*Id.* at 14).

The Commissioner also contends that Cowher's argument "relies on an inapplicable regulatory scheme, and in any event, is incorrect." (*Id.* at 15). By the Commissioner's telling, contrary to Cowher's assertion, the ALJ "did not assign any 'weight' to Dr. Leonard's findings." (*Id.*). "Rather," the argument goes, "consistent with the new regulatory framework applicable to

this case, the ALJ simply determined that Dr. Leonard's findings were 'persuasive[,]" but "did not adopt Dr. Leonard's findings wholesale." (*Id.*).

Moreover, the Commissioner asserts that because the ALJ, in his RFC determination, "cited to evidence supporting that [Cowher] could understand, remember, and carry out simple instructions," the ALJ did not err. (*Id.* at 17). Cowher's contention that an RFC including a limitation to very short and simple instructions conflicts with the dishwasher job offered by the VE, the Commissioner argues, is "simply a red herring[,]" since the RFC formulated by the ALJ contained no such limitation. (*Id.* at 18). Because the ALJ "engaged in reasonable fact-finding," and his RFC determination that Cowher could understand, remember, and carry out simple instructions satisfies the substantial evidence standard, the Commissioner argues that the Court should affirm the ALJ's decision. (*Id.* at 18–19).

2.    **The ALJ's Treatment of Dr. Leonard's Assessment and His RFC Determination that Cowher Could Understand, Remember, and Carry Out Simple Instructions**

Because Cowher's arguments focus solely on the ALJ's conclusion, as part of Cowher's RFC, that she could understand, remember, and carry out simple instructions, the Court begins its analysis by reviewing the ALJ's RFC determination on that score and his treatment of the relevant medical evidence, including Dr. Leonard's assessment.

In formulating Cowher's RFC, the ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "also considered the medical opinion(s) and prior administrative medical finding(s)[.]" (Tr. 21).

With respect to Cowher's "mental condition," the ALJ noted that the "medical evidence shows [Cowher] has been diagnosed with depression, bipolar disorder, anxiety, and a cognitive disorder, … for which she took medication." (Tr. 23). But as to Cowher's alleged mental symptoms, "including her memory and concentration problems," the ALJ concluded that the objective medical evidence, the level of treatment, and the claimant's activities of daily living did not support the degree of limitations alleged. (*Id.*).

To support that conclusion, the ALJ first pointed to a report prepared by Dr. Usman Ali on August 13, 2019, which stated that Cowher "had a bipolar disorder with normal speech, linear and goal directed thought processes, no suicidal ideation, no paranoid ideation, no hallucinations, intact concentration, fair insight, and fair judgment[.]" (*Id.*). The ALJ also explained that a February 7, 2020, report by Rachel Lamkin found that Cowher "had normal behavior, thought content, and judgment[.]" (*Id.*). A July 29, 2020, report authored by Dr. Lipitz, the ALJ further explained, found that Cowher "had an intact attention span, good memory during testing, and intact clock drawing[.]" (*Id.*).

The ALJ also deemed several medical assessments unpersuasive. (Tr. 23–24). For example, the ALJ noted that two reports, dated July 31, 2019, and September 12, 2020, respectively, found that Cowher "had limitations exceeding" those contained in the RFC formulated by the ALJ. (Tr. 23). Those reports found, among other things, that Cowher "worked on relaxation techniques for anxiety" and "had tangential thought processes, and limited judgment and insight." (*Id.*). However, the ALJ explained that in November 2019, the same medical professional reported that Cowher "was not having mind racing[,]" was "not hyperverbal[,]" and "had coherent thought processes[] and appropriate thought content" with

no perceptual impairment. (*Id.*). The ALJ also explained that Cowher's treatment records through the date last insured showed that Cowher's "mental health issues were dealt with by monthly visits and routine medication prescriptions." (*Id.*). Because the ALJ found that the July 13, 2019, and September 12, 2020, assessments were inconsistent with the assessments by other medical providers, he found those assessments unpersuasive. (*Id.*).

Next, the ALJ turned to a November 19, 2019, assessment that similarly found that Cowher had limitations exceeding those contained in the ALJ's formulation of Cowher's RFC. (*Id.*). That assessment explained that Cowher "stated she had crying spells, loss of usual interest, fatigue, loss of energy, diminished sense of pleasure, social withdrawal, anxiety when making decisions, panic attacks, at times talkative periods, at times increased goal-directed activity, and word finding deficits." (*Id.*). The assessment also found that Cowher "had mildly impaired concentration and memory due to nervousness and anxiety, and fair insight." (*Id.*).

However, the ALJ found this assessment unpersuasive, in part because it was not supported by the author's own findings. (*Id.*). The ALJ explained that the same assessment found that Cowher "had normal speech, coherent and goal-directed thought processes, average intellectual functioning, and appropriate general fund of information, good judgment, and a normal appetite." (*Id.*). The ALJ also concluded that the November 19, 2019, assessment was inconsistent with the assessments by other medical providers. (*Id.*).

Two reports, authored by Dr. Debra Haldeman on July 17, 2019, and August 25, 2020, garnered similar treatment by the ALJ. (Tr. 24). Those reports also found that Cowher had limitations greater than those included in the ALJ's RFC determination. (*Id.*). Specifically, those reports found that Cowher "stated she cried after being yelled at[] and felt overwhelmed." (*Id.*).

But the ALJ concluded that this report was unpersuasive because (1) Dr. Haldeman's "56 pages of progress reports are scant and mostly indecipherable[,]" and (2) her opinion was "inconsistent with the assessments by medical providers discussed above." (*Id.*).

"In contrast" to the assessments just discussed, which the ALJ found unpersuasive, he explained that "the State agency psychological consultants' assessments are persuasive, because they are consistent with the above findings by medical providers." (Tr. 23) (internal citation omitted). In making that statement, the ALJ cited to Exhibits B-1A and B-3A, which contain assessments authored by Dr. Franks and Dr. Leonard, respectively. (Tr. 23, 67–82, 85–101).

As relevant to Cowher's mental RFC, Dr. Franks's assessment, dated November 25, 2019, found that Cowher's ability to carry out detailed instructions and maintain attention and concentration for extended periods was "[m]oderately limited[,]" but her ability to "carry out very short and simple instructions" was "[n]ot significantly limited[.]" (Tr. 79). The assessment also found that Cowher was "capable of performing tasks within a schedule [] at a consistent pace" and "can make simple decisions." (Tr. 80). According to Dr. Franks's assessment, Cowher had "the mental capacity to manage, understand, and complete simple one or two step tasks." (*Id.*).

Dr. Leonard's assessment, dated July 8, 2020, contains similar findings. For example, Dr. Leonard also found that Cowher's ability to carry out detailed instructions was moderately limited, but her ability to carry out "very short and simple instructions" was not significantly limited. (Tr. 97). The assessment further concluded that Cowher was "able to carry out very short and simple instructions (i.e., perform one and two step tasks)[,]" and was "able to maintain concentration and attention for extended periods of time." (Tr. 98).

The ALJ explained that he found Dr. Franks and Dr. Leonard's assessments "persuasive because they are consistent with the persuasive assessment of Christine Fahr, N.P.[,]" "and because they are consistent with the objective medical evidence." (Tr. 25). Unlike the assessments conducted by Dr. Franks and Dr. Leonard, Fahr's assessment, dated November 21, 2019, did not specifically contemplate Cowher's mental RFC. (Tr. 482–501). The assessment did note, however, that Cowher "see[s] a nurse practitioner monthly, and … a psychologist twice a month" with respect to her reported depression, bipolar disorder, and anxiety. (Tr. 484–85). It also explained that Cowher stated "that she has a good family support system and is well maintained and compliant with her medications." (Tr. 485).

The remainder of Fahr's assessment focused on Cowher's physical capabilities, finding, for example, that she can walk without difficulty, fully squat with difficulty rising, and rise from a chair without difficulty. (Tr. 487). The assessment also made findings with respect to Cowher's range of motion and her ability to lift, carry, stand, and walk. (Tr. 489–501). It likewise noted that Cowher reported that she (1) "does not need help at home[,]" (2) can cook if she is hungry, (3) cleans two days a week, (4) does laundry once a week, and (5) enjoys swimming, watching television, and using social media. (Tr. 486).

Next, the ALJ found that Cowher's activities of daily living "also do not support the level of her complaints." (Tr. 24). In so doing, he noted that Fahr's assessment stated that Cowher "cooked, ate out, cleaned two days a week, washed laundry weekly, shopped one to two times a week, watched television, used social media on the Internet, and swam[.]" (*Id.*).

The ALJ also explicitly addressed medical opinions and prior administrative findings, explaining that he "cannot defer or give any specific evidentiary weight, including controlling

weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (Tr. 25). Explaining that he "has fully considered the medical opinions and prior administrative medical findings[,]" the ALJ stated that "besides the mental health opinions discussed above," Fahr's assessment also reported "limitations which are incorporated into" Cowher's RFC. (*Id.*). On this score, the Court understands the ALJ to mean that the mental health opinions previously relied upon by the ALJ—namely, the assessments conducted by Dr. Ali, Lamkin, Dr. Lipitz, Dr. Franks, and Dr. Leonard—informed the mental limitations contained in Cowher's RFC.

    3.    **The ALJ Likely Erred In Failing to Explain Why He Did Not Include Dr. Leonard's Finding that Cowher Could Only Follow "Very Short and Simple Instructions" In Cowher's RFC, Even Though the ALJ Found Dr. Leonard's Opinion Persuasive**

As the Commissioner argues, (ECF No. 14 at 15), and Cowher concedes, (ECF No. 12 at 5), the ALJ's finding that Dr. Leonard's assessment was "persuasive" in no way required the ALJ to adopt Dr. Leonard's findings wholesale or include every limitation found in that assessment in Cowher's RFC. *See Wilkinson v. Comm'r of Soc.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("The ALJ was not required to adopt all of Dr. Ali's opinion solely because she found the opinion as a whole persuasive[.]").

But Cowher argues that the ALJ erred, not by failing to adopt Dr. Leonard's finding that she "is able to carry out very short and simple instructions" per se, (Tr. 98), but by failing to adequately explain why he neglected to include that limitation in Cowher's RFC. (ECF No. 12 at 5). A review of the relevant regulatory scheme and applicable case law indicates that Cowher is likely correct.

For claims filed on or after March 27, 2017, such as Cowher's, ALJs are not to "defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "The factors of supportability and consistency are the most important factors [ALJs will] consider when [they] determine how persuasive [they] find a medical source's medical opinion or prior administrative medical finding to be." 20 C.F.R. § 404.1520c(b)(2). And "the ALJ must 'give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'" *Melchionna*, 2022 WL 822127 at *4 (quoting *Cotter*, 642 F.2d at 705).

As the Third Circuit has explained, "[i]n determining a claimant's RFC, an ALJ must consider all relevant evidence, including medical opinions, statements from medical sources, and a claimant's subjective complaints." *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). While the ALJ considers evidence that includes medical opinions and any prior administrative medical findings, the RFC assessment is an administrative finding made by the ALJ and not a medical opinion. *See Tedesco v. Comm'r of Soc. Sec.*, 833 F. App'x 957, 960 (3d Cir. 2020) ("'The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and residual functional capacity determinations.'") (quoting *Chandler*, 667 F.3d at 361). Therefore, an ALJ's RFC determination "must be 'accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Melchionna v. Comm'r of Soc. Sec.*, No. 21-1860, 2022 WL 822127, at *4 (3d Cir. Mar. 17, 2022) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Here, in formulating Cowher's RFC, the ALJ cited to Dr. Leonard's assessment and found it "persuasive, because [it is] consistent with" other medical professionals' findings. (Tr. 23). Dr.

Leonard's assessment found that Cowher was "able to carry out very short and simple instructions (i.e, perform one and two step tasks)" and "complete 1–2 step tasks on a sustained basis[.]" (Tr. 98). Crucial to Cowher's argument, the RFC formulated by the ALJ limited her only to understanding, remembering, and carrying out "simple instructions." (Tr. 21).

Though Cowher makes no mention of it in her briefing, the Commissioner points out that the ALJ found that "the State agency psychological consultants' *assessments* [] are persuasive[,]" (Tr. 23) (emphasis added); (ECF No. 14 at 14), which included the assessments of both Dr. Leonard and Dr. Franks. The Court notes that Dr. Franks also found that Cowher had "the mental capacity to manage, understand, and complete simple one or two step tasks." (Tr. 80). Thus, the ALJ found *two* assessments persuasive that limited Cowher to very short and simple instructions, or one- to two-step tasks, but nonetheless included only a limitation to "simple instructions" in Cowher's RFC.

To be sure, a difference exists between an individual capable of following "simple instructions," and an individual only capable of following "very short and simple instructions (i.e., perform one and two step tasks)[.]" (Tr. 23, 98).

The Social Security Administration and courts alike routinely rely on the Dictionary of Occupational Titles (the "DOT") when determining whether a claimant is capable of performing work that exists in significant numbers in the national economy. *Ferrebee v. Kijakazi*, No. 20-CV-12188, 2022 WL 905153, at *7–8 (M.D. Pa. Mar. 28, 2022). The DOT lists thousands of jobs and describes the requirements of each, including, as relevant here, the "Reasoning Development" level associated with each occupation. *Id*. Jobs at Reasoning Development Level 1 ("R1") require an employee to "[a]pply commonsense understanding to carry out *simple one- or two-step*

instructions[,]" while Jobs at Reasoning Development Level 2 ("R2") require the ability to "[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions*[.]" Appendix C – Components of the Definition Trailer, 1991 WL 688702 (emphasis added).

Courts have found that a limitation, like that contemplated by Dr. Leonard's assessment, to "very short and simple instructions (i.e., *perform one and two step tasks*)[,]" (Tr. 98) (emphasis added), is consistent with jobs at R1, but inconsistent with jobs at R2. *See Ferrebee*, 2022 WL 905153, at *8 (collecting cases). On the other hand, courts generally find that a limitation to "simple instructions," like the one included in Cowher's RFC, is consistent with jobs at both R1 and R2. *See Beatty v. Kijakazi*, No. 21-CV-12, 2022 WL 1642391, at *1 n.3 (W.D. Pa. May 24, 2022) (explaining that "a 'simple instructions' limitation is generally consistent with Level 1 Reasoning"); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021) (finding no conflict between a limitation to simple instructions and jobs at R2, and explaining that the difference between R1 and R2 is the "length of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length"); *Delesteinne v. Saul*, No. 20-CV-1349, 2021 WL 5744684, at *1 n.3 (W.D. Pa. Dec. 2, 2021).

Having established the difference between the limitation found in Dr. Leonard and Dr. Franks's assessments and the limitation included by the ALJ in Cowher's RFC, the Court turns to whether the ALJ's finding that Cowher could "understand, remember and carry out simple instructions" was "accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.

In formulating Cowher's RFC, the ALJ was required to "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett v. Commissioner of SSA*, 220 F.3d 112,

119 (3d Cir. 2000). The ALJ "can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" *Rutherford*, 399 F.3d at 554 (citation omitted). As relevant here, where an ALJ finds an assessment "to be generally persuasive and supported by the record," and that assessment "include[d] a limitation to one- and two-step tasks, the ALJ [is] required to explain the failure to include this limitation[.]" *Shipman v. Kizakazi*, No. 22-CV-00636, 2023 WL 5599607, at *27 (M.D. Pa. Aug. 29, 2023); *see also Soto v. Kijakazi*, No. 21-CV-1531, 2022 WL 4358087, at *8–9 (M.D. Pa. Sept. 20, 2022); *Pokorny v. Kijakazi*, No. 21-CV-00790, 2023 WL 6988360, at *6 (M.D. Pa. Oct. 23, 2023).

Here, the Court finds that the ALJ likely did not properly explain his failure to include a limitation to very short and simple instructions (i.e., one- and two-step tasks) in Cowher's RFC, even though he found the assessments of Dr. Franks and Dr. Leonard—both of which included such a limitation—generally persuasive. Apart from the RFC itself, the portion of the ALJ's decision detailing the medical evidence analyzed in formulating Cowher's RFC makes no mention of Cowher's ability with respect to following instructions or completing tasks. (Tr. 21–25). *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) (equating limitations related to completing "tasks" to those related to following "instructions"). Thus, the ALJ never explicitly addressed his decision to limit Cowher to "simple instructions," nor directly explained why he neglected to adopt the more stringent limitation found in Dr. Franks and Dr. Leonard's assessments.

The Commissioner appears to argue that the ALJ implicitly explained his conclusions on this score. He points to the ALJ's recantation of the assessments conducted by Dr. Ali, Lamkin, and Dr. Lipitz. (ECF No. 14 at 13). As the ALJ explained, these medical professionals found,

among other things, that Cowher: (1) "had linear and goal directed thought processes, ... intact concentration, fair insight, and fair judgment"; (2) "had normal behavior, thought content, and judgment"; and (3) "had an intact attention span, good memory during testing, and intact clock drawing[.]" (Tr. 23).

The Commissioner also notes that the ALJ explained that Cowher saw a psychologist and a therapist regularly and was compliant with her routine medications. (ECF No. 14 at 14). And he highlights the ALJ's consideration of Cowher's daily activities—namely, that she could prepare simple meals, use Facebook, text and play games on her phone, use Google, care for her pet bird, and watch television. (*Id.*).[1]

In short, the Court doubts that this evidence, considering the persuasive weight the ALJ gave Dr. Franks and Dr. Leonard's assessments, sufficiently explains why the ALJ failed to include a limitation to very short and simple instructions (i.e., one- or two-step tasks) in Cowher's RFC, and instead limited Cowher only to understanding, remembering, and carrying out simple instructions.

Because the one- or two-step tasks/very short and simple instructions limitation contained within the opinions of Dr. Franks and Dr. Leonard were "not addressed or incorporated into the RFC in any meaningful fashion[,]" *Simon v. Kijakazi,* No 20-CV-02064, at *24 (M.D. Pa. Mar. 18,

---

[1] The Court notes that the Commissioner also appears to point to the ALJ's discussion of Dr. Miller and Dr. Gibbons's assessments as substantial evidence supporting the ALJ's "simple instructions" limitation. (ECF No. 14 at 13–14). However, the ALJ found both assessments unpersuasive, explaining that they were "not supported by [the examiner's] own findings" and "inconsistent" with other assessments. (Tr. 23). Accordingly, the portions of the ALJ's discussion of those assessments that may be construed as supporting the ALJ's "simple instructions" limitation cannot now serve as substantial evidence for that limitation's inclusion in Cowher's RFC. *See Burlingame v. Kijakazi,* No. 23-CV-174, 2023 WL 5211618, at *4 (M.D. Pa. Aug. 14, 2023) (explaining that where an ALJ "appears to have relied on an opinion which he ultimately found to be unpersuasive, [a court] cannot conclude that substantial evidence supports the ALJ's decision").

2022), the Court finds that the ALJ likely failed to provide a "clear and satisfactory explication of the basis on which" the limitation to "simple instructions" rested, *Cotter*, 642 F.2d at 704. As a result, the Court struggles to discern "whether the ALJ consciously rejected those suggested limitations or simply overlooked them." *McAuliffe v. O'Malley*, No. 23-CV-477, 2024 WL 1329316, at *10 (W.D. Pa. Mar. 27, 2024).

However, as the Court will now explain, it need not reach a definitive conclusion as to whether the ALJ erred because, even assuming the limitation set forth in Dr. Franks and Dr. Leonard's assessments warranted inclusion in Cowher's RFC, a person with this "new" adjusted RFC would still be able to perform an occupation—identified by the VE at Cowher's administrative hearing—that exists in significant numbers in the national economy.

### 4.    Even Assuming the ALJ Erred, Remand Is Unnecessary Because the Alleged Error Was Harmless

"Ordinary harmless error review, in which the [plaintiff] bears the burden to demonstrate harm, is applicable to administrative appeals" like Cowher's. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Cowher therefore must "'explain[] … how the … error to which [s]he points could have made any difference." *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). In this particular context, the ALJ's alleged error is harmless if the outcome of Cowher's claim—i.e., a finding that she was not disabled—would have been the same even if the limitation she argues warranted inclusion in her RFC had, in fact, been included. Such is the case here. Even if Cowher's RFC had contained a limitation to carrying out "very short and simple instructions (i.e., perform one and two step tasks)[,]" as Dr. Leonard's assessment found, (Tr. 98), Cowher

would still be able to perform an occupation, identified by the VE at the administrative hearing, that exists in significant numbers in the national economy.

"At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing *one job* that exists in significant numbers in the national economy." *Sasse v. Comm'r of Soc. Sec.*, No. 18-CV-02964, 2019 WL 1233553, at *18 n.11 (D. N.J. Mar. 18, 2019) (emphasis added). Indeed, under the relevant regulations, "[w]ork exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which [the claimant is] able to meet with [his or her] mental abilities and vocational qualifications." 20 C.F.R. § 416.996(b) (emphasis added). "[I]f work that [the claimant] can do does exist in the national economy, [the ALJ] will determine that [he or she is] not disabled." *Id.*

Here, if Cowher's RFC contained a limitation to very short and simple instructions/one- to two-step tasks, such a limitation would only be compatible with jobs at R1, and not jobs at R2. *See Ferrebee*, 2022 WL 905153, at *8 (collecting cases). According to the DOT, of the three jobs identified by the VE at Cowher's November 2, 2020,[2] administrative hearing, "dishwasher" and "laundry folder" are both at R2, and would therefore conflict with such a limitation. *See* 1991 WL 672755; 1991 WL 673072; (*see also* Tr. 63).

However, the DOT provides that the "housekeeper" job identified by the VE is an R1 occupation, which Cowher could perform even if her RFC limited her to very short and simple instructions (i.e., one- or two-step tasks). *See* 1991 WL 672783. And the VE testified that "3.3

---

[2] The Court notes that, at Cowher's administrative hearing, the VE testified that his testimony was consistent with the DOT. (Tr. 63). *See Green v. Astrue*, No. 10-CV-468, 2010 WL 4929082, at *17–18 (W.D. Pa. Nov. 30, 2010) (explaining that because the "VE testified that his testimony was consistent with the DOT[,]" the "ALJ was entitled to rely upon the VE's testimony") (citing *Gibbons v. Barnhart*, 85 F. App'x 88 (10th Cir. 2003)).

million" housekeeper jobs existed in the national economy. (Tr. 63). Accordingly, even if Cowher's RFC had contained the limitation set forth in Dr. Franks and Dr. Leonard's assessments—that she was limited to following very short and simple instructions and completing one- to two-step tasks—the VE nonetheless identified an occupation that existed in significant numbers in the national economy that an individual with such a limitation could perform. *See Lamoureux v. Comm'r of SSA*, No. 21-1677, 2021 WL 5860738, at *6 (3d Cir. Dec. 20, 2021) (finding a VE's identification of "nearly 36,000 jobs in the national economy that would be available for someone with [the claimant's] functional capacity" sufficient to sustain the Commissioner's burden of proof that the claimant was not disabled).

Thus, even assuming the veracity of Cowher's argument that her RFC should have included the limitation contained in Dr. Leonard's assessment, the ALJ's conclusion that Cowher was not disabled would have remained the same. The ALJ's alleged failure to include such a limitation (or adequately explain its absence in Cowher's RFC) is, therefore, harmless error, and remand on the basis of the arguments advanced by Cowher would be inappropriate. *See, e.g., Soto v. Kijakazi*, No. 21-CV-1531, 2022 WL 4358087, at *11 (M.D. Pa. Sept. 20, 2022) (finding harmless error and affirming the Commissioner's decision where, even assuming the plaintiff's argument that his RFC should have included "a limitation to 1 or 2-step tasks" was correct, the VE identified an occupation with 500,000 jobs available in the national economy that an individual with such a limitation could perform); *Zirnsak v. Colvin*, 777 F.3d 607, 619–20 (3d Cir. 2014); *Booker v. Colvin*, No. 14-CV-4984, 2017 WL 914911, at *8 (E.D. Pa. Mar. 7, 2017); *Ferrebee*, 2022 WL 905153, at *4; *Shingler v. Kijakazi*, No. 20-CV-01344, 2022 WL 273426, at *12 (M.D. Pa. Jan. 28, 2022); *Pokorny v. Kijakazi*, 2023 WL 6988360, at *6; *Coy v. Astrue*, No. 8-CV-1372, 2009 WL 2043491, at *14 (W.D. Pa.

Jul. 8, 2009) ("No principle of administrative law 'require[s] that we convert judicial review of an agency action into a ping-pong game' in search of the perfect decision.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).

Finally, Cowher's argument to the contrary does not alter the Court's conclusion. By Cowher's telling, the ALJ's alleged error is not harmless "because should the dishwasher job"[3] offered by the VE, which is an R2 occupation, "be excluded[,] the only jobs remaining were of light exertion, which given Ms. Cowher's age (55+) and vocational profile directs an award of disability pursuant to Grid Rule 202.06." (ECF No. 15 at 3) (emphasis in original); (*see also* ECF No. 12 at 8). Cowher argues that "[t]his is why remand is necessary." (ECF No. 15 at 3). The Court finds this argument unavailing.

Cowher appears to assert that Grid Rule 202.06 applies in this circumstance because, if her RFC had included a very short and simple instructions/one- to two-step tasks limitation, the only "remaining" occupations offered by the VE that she would be able to perform with such a limitation are jobs categorized as "light work." (*See* ECF No. 15 at 2) ("[I]f only those light jobs remain then Ms. Cowher is disabled as a matter of law pursuant to Grid Rule 202.06."); *see also* 20 C.F.R. § 404.1567 ("To determine the physical exertion requirements of work in the national economy, [the Commissioner] classif[ies] jobs as *sedentary, light, medium, heavy,* and *very heavy.*") (emphasis in original). But this argument misunderstands the contours of Grid Rule 202.06. That

---

[3] It appears to the Court that Cowher erroneously assumes that the dishwasher job was the only R2 occupation of the three offered by the VE at her administrative hearing. But as the Court previously explained, both the dishwasher job and the laundry folder job offered by the VE were R2 occupations. However, even if Cowher's argument had accounted for the fact that both occupations would be "excluded" if her RFC contained the limitation found in Dr. Leonard's assessment, her argument related to Grid Rule 202.06 would still be unpersuasive.

rule only applies to claimants whose RFC limits their "[m]aximum [s]ustained [w]ork [c]apability" to "[l]ight [w]ork[.]" 20 C.F.R. Part 404, Subpart P, Appendix 2 at § 202.06; *see also Crutcher v. Comm'r of Soc. Sec.*, No. 18-CV-17675, 2020 WL 13555504, at *6 n.6 (D. N.J. Apr. 29, 2020) (explaining that Gride Rule 202.06 applies to claimants with "an RFC limited to light work").

Here, however, the ALJ found that Cowher "had the [RFC] to perform a full range of work at all exertional levels[,]" and only included "nonexertional limitations" in Cowher's RFC. (Tr. 21). And Cowher makes no argument that the ALJ erroneously omitted any exertional limitation—let alone a limitation to light work—in her RFC. The regulation encompassing Grid Rule 202.06 states that "[t]he rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 C.F.R. Part 404, Subpart P, Appendix 2 at § 200.00(e)(1); *see id.* at § 200.00(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled."). The mere fact that the "remaining" job(s) offered by the VE were categorized as light work is if no import, since Grid Rule 202.06 is only applicable where a claimant's RFC limits them to light work. Accordingly, the Court finds Cowher's argument on this score unavailing.

## V.     Conclusion

In sum, even assuming Cowher is correct in arguing that the ALJ erred by not including, or failing to explain the absence of, a limitation to very short and simple instructions in her RFC, that error is harmless. Because the VE identified an occupation that exists in significant numbers in the national economy that Cowher could perform even if her RFC had included the limitation

she argues was erroneously omitted and/or ignored, the Court finds that remand is not warranted in this case. Based on the foregoing, the Court finds that the Commissioner's decision that Cowher is not disabled is supported by substantial evidence and should therefore be affirmed.

An appropriate order follows.